# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) **OKLAHOMA CORRECTIONS PROFESSIONALS ASSOCIATION, INC.**, a not for profit corporation; <br> (2) **DAVID RAMSEY**, individually; <br> (3) **GLEN COLEMAN**, individually; <br> (4) **BOB ZAPFFE**, individually; and <br> (5) **TRAVIS ARY**, individually, <br><br> Plaintiffs, <br><br> v. <br><br> **PRESTON DOERFLINGER**, <br> Administrator and Cabinet Secretary for the Office of State Finance, in his official capacity, <br><br> Defendant. | Case No. CIV-10-1369-R |

## ORDER

Before the Court are the parties' cross motions for summary judgment [Doc. Nos. 105-06], as well as Defendant's motion to strike [Doc. No. 109] and Plaintiffs' motion to supplement [Doc. No. 119]. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### Background

Oklahoma permits state employees to use voluntary payroll deductions ("VPDs") to pay membership dues to "the Oklahoma Public Employees Association ["OPEA"] … or any other statewide association limited to state employee membership with a minimum membership of two thousand (2,000) dues-paying members." OKLA. STAT. ANN. tit. 62,

§ 34.70(B)(5) (West).[1] The numerosity requirement was increased from 1,000 to 2,000 in a 2008 amendment to § 34.7, Doc. No. 107, at 25; Doc No. 111, at 6 (Undisputed Fact 3), but there is an exemption from this requirement for any statewide association approved for VPD prior to January 1, 2008, *id.* § 34.70(D). The Office of Management and Enterprise Services, the agency responsible for VPDs, Doc. No. 107, at 32; Doc. No. 111, at 9-10 (Undisputed Fact 27), interprets § 34.70 to exempt OPEA from the numerosity and exclusivity requirements, Doc. No. 107, Attach. 03, at 141-42.

The Oklahoma Corrections Professionals Association ("OCP") is an organization devoted to educating and advocating for employees of the Oklahoma Department of Corrections and the Pardon and Parole Board. Doc. No. 107, at 28; Doc. No. 111, at 6, 8 (Undisputed Fact 12). OCP was formed in May 2008. *Id.* OCP and OPEA are competing employee organizations. Doc. No. 107, at 37; Doc. No. 111, at 6, 13 (Undisputed Fact 42). The State initially approved OCP for VPD, but it later received a complaint from OPEA stating that OCP no longer had 2,000 members. Doc. No. 107, at 37; Doc. No. 111, at 6, 13 (Undisputed Fact 43). After investigating OCP's membership, the State concluded that OCP was no longer eligible for VPD because of its failure to maintain 2,000 members and notified OCP of its intent to terminate its VPD status in December 2010. Doc. No. 107, Attach. 04-17. OCP then brought a 42 U.S.C. § 1983 action to challenge the numerosity and exclusivity requirements to § 34.70.

---

[1] The Court will refer to the 2,000 member requirement as the "numerosity requirement," and the requirement that an association be limited to state employees as the "exclusivity requirement."

## Numerosity Requirement

A. **Viewpoint Discrimination**

   1. **Facial Violation**

Plaintiffs argue that § 34.70 constitutes viewpoint discrimination on its face in violation of the First Amendment because OPEA and other associations approved for VPD prior to 2008 continue to qualify regardless of how many members they have, whereas OCP must maintain 2,000 members to qualify. "At the core of the First Amendment is the idea that 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Viewpoint discrimination is a subset of content-based discrimination. *Id.* Content-based discrimination is discrimination "based upon either the content or the subject matter of the speech." *Id.* (citation omitted) (quoting *Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 536 (1980)). Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* (quoting *Rosenberger v. Rectors & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1975)). A viewpoint-based speech restriction is presumptively invalid. *Id.* But if the State of Oklahoma has not engaged in viewpoint discrimination, it must demonstrate only a rational basis to justify the numerosity requirement. *Oklahoma Corr. Prof'l Ass'n Inc. v. Doerflinger*, 521 F. App'x 674, 678 (10th Cir. 2013) (citing *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353,

359 (2009)). The first question, then, is whether the State has engaged in viewpoint discrimination.

### a. Speaker v. Viewpoint

The Tenth Circuit directed this Court to consider, when analyzing this issue, the distinction between speaker-based discrimination and viewpoint-based discrimination. *Id.* at 678-79. This is because "*speaker*-based distinctions are permissible when the state *subsidizes* speech," *id.* (quoting *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 646 (7th Cir. 2013)), and a VPD program is a subsidy that the State has no obligation to provide, *id.* (citing *Ysursa*, 555 U.S. at 353). In considering Plaintiffs' facial challenge, the Court must determine whether the 2008 amendment to § 34.70, which increased the numerosity requirement from 1,000 to 2,000 and exempted organizations approved for VPD prior to 2008, was enacted with a viewpoint-discriminatory purpose. *Pahls*, 718 F.3d at 1230. This is a demanding standard that requires proving that the amendment was passed "because of, not merely in spite of, the action's adverse effects upon" OCP. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)). Combining the speaker-viewpoint distinction with this standard requires Plaintiffs to prove that the Oklahoma legislature amended § 34.70 with the purpose not just of preventing OCP from qualifying for VPD, but preventing OCP from qualifying for VPD *because of its viewpoint*.

In support of this argument, Plaintiffs point to the statute, which names OPEA and exempts it from the numerosity requirement because it was approved for VPD prior to 2008. They also point to an affidavit of Oklahoma State Representative Gus Blackwell, in which Blackwell states that OPEA lobbied for the increase in the numerosity requirement

4

to "ensure that OCP would not be formed." Doc. No. 107, Attach. 07-00, at 2, 4. But Plaintiffs have not produced any evidence linking the numerosity requirement to any viewpoint discrimination against OCP. Although the evidence produced supports the claim that the amendment was passed to prevent OCP from qualifying for VPD, thus reducing competition with OPEA for membership dues, this constitutes merely *speaker*-based discrimination and not *viewpoint*-based discrimination. "A government subsidy 'that discriminates among speakers does not implicate the First Amendment unless it discriminates on the basis of ideas.'" *Doerflinger*, 521 F. App'x at 678 (quoting *Walker*, 705 F.3d at 646-47). The Court is mindful of the Tenth Circuit's observation that "the speaker/viewpoint distinction may as a practical matter be illusory. 'Speech restrictions based on the identity of the speaker are all too often simply a means to control content.'" *Id.* at 679 (citation omitted) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). But Plaintiffs have not produced any evidence that the legislature had OCP's viewpoint or ideas in mind when increasing the numerosity requirement from 1,000 to 2,000 members or exempting those organizations already approved for VPD.

Plaintiffs argue that the Court should impute the viewpoint discriminatory purpose of OPEA to the State because OPEA is a state actor. But the two cases they cite in support of this proposition, *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 294 (2001) and *Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007), involved whether the *defendants* were state actors such that they could be held liable under § 1983. In this case, Plaintiffs are not suing OPEA, and have not cited any authority that would

5

permit the Court to impute the discriminatory purpose of a third party onto a defendant for purposes of § 1983 liability. Indeed, for a defendant to be liable under § 1983, the violation must be "traceable to [the] defendant-official's 'own individual actions.'" *Pahls*, 718 F.3d at 1225. Accordingly, the Court may not impute OPEA's purpose, even a viewpoint discriminatory purpose, onto Defendant.

### b. Rational Basis

Because Plaintiffs have not demonstrated that the State engaged in viewpoint discrimination when it amended § 34.70, the State must demonstrate only a rational basis for the numerosity requirement. *Doerflinger*, 521 F. App'x at 680. Plaintiffs first argue that "this Court cannot adopt a 'rational basis' inconsistent with the purpose stated by the Oklahoma Supreme Court" in *Oklahoma Corrections Professional Ass'n v. Jackson*, 280 P.3d 959 (Okla. 2012). Doc. No. 112, at 32-33. In *Jackson*, the Court held that if this Court finds the numerosity requirement unconstitutional, that provision is severable from the rest of § 34.70. *Id.* at 962. Contrary to Plaintiffs' contention, however, the rational basis inquiry is not limited to the Oklahoma Supreme Court's conclusion on the severability of the numerosity requirement, or even on that Court's view of the purpose of that requirement. In arguing that there is no rational basis underlying this provision, Plaintiffs have the "heavy burden" of negating "any reasonably conceivable state of facts that could provide a rational basis for the [selective] classification." *Doerflinger*, 521 F. App'x at 680 (citation omitted). The legislature's actual motivation is irrelevant to this analysis. *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004). The Court is not even bound by the parties' arguments in this regard. *Id.*

The Court finds that decreasing the burden on the agency administering VPD is a legitimate government interest, and that the numerosity requirement is rationally related to that interest. In response to Defendant raising this justification, Plaintiffs argue that "the administrative burden of ongoing monitoring of membership totals for a single employee association are greater than simply doing nothing." Doc. No. 112, at 22. They also contend that there is no such requirement for numerous other transactions that the State engages in that "have a greater likelihood to administratively overwork the state mechanism." *Id.* at 35. Plaintiffs note that only four employee associations have ever applied for VPD, and that two of these organizations have fewer members than OCP, but are exempt from the numerosity requirement. *Id.* at 35-36. Finally, they point to the testimony of the former Director of the agency responsible for VPD, in which he stated that there would be no increased burden on the agency to continue deducting OCP membership fees from employees' payrolls. Doc. No. 107, Attach. 3, at 151.

Plaintiffs' arguments impose a higher standard on the State than it is required to satisfy under rational basis review. The "facts" underlying a rational basis for a statutory classification need not actually be true. The justification "may be based on rational speculation unsupported by evidence or empirical data." *Cordoba v. Massanari*, 256 F.3d 1044, 1049 (10th Cir. 2001) (quoting *FCC v. Beach Commc'ns., Inc.*, 508 U.S. 307, 315 (1993)). Thus, even if the agency administering VPD in 2008 was not actually burdened by the amount of time it takes to approve or process VPDs, as long as this "fact" is "reasonably conceivable," that is sufficient to support a classification under rational basis review. It is certainly conceivable that an agency would be less burdened with processing

7

VPDs if the numerosity requirement were raised from 1,000 to 2,000, because fewer organizations would qualify for the program. The legislature could have reasonably concluded that the time saved from the decrease in the number of associations applying for and participating in VPD would outweigh the time spent ensuring that those currently participating in VPD maintain at least 2,000 members.

The Court finds a similar Supreme Court case, *United States v. Maryland Savings-Share Insurance Corp.*, 400 U.S. 4 (1970) (per curiam), instructive on this point. In that case, the plaintiff argued that a tax exemption for nonprofit corporations organized before a certain date arbitrarily discriminated against nonprofit insurers, like itself, formed after the specified date. *Id.* at 4-5. The Court held that the classification was rationally related to a legitimate government interest. *Id.* at 6-7. It noted that "[t]he fact that Congress enacts a statute containing a 'grandfather clause,' which exempts from the general income tax certain corporations organized prior to a specified date, does not of itself indicate that Congress has made an arbitrary classification." *Id.* at 6. Rather, the Court held that Congress may "refuse[] to exempt from tax newly formed corporations, the multiplication of which might burden otherwise valid federal programs." *Id.* at 6-7. Similarly, the Oklahoma legislature may refuse to exempt from the numerosity requirement organizations that had not obtained VPD status prior to January 1, 2008, if only for the sole purpose of decreasing the potential burden on the State of managing the VPD program.

## 2. As Applied Violation

Plaintiffs also argue that the numerosity requirement violates the First Amendment as applied to OCP because it is the only statewide association to be denied VPD status, and this is due to its viewpoint. But they have not produced any evidence linking the termination of OCP's VPD status to its viewpoint. The evidence shows that the State's decision to terminate had nothing to do with its viewpoint, but rather was based simply on OCP not maintaining 2,000 members. Doc. No. 107, Attach. 03, at 164, Attach. 04-17. The Court thus finds that the numerosity requirement does not constitute viewpoint discrimination either on its face or as applied to OCP.

## B. Denying OCP a Limited Forum for Speech

Plaintiffs next argue that the VPD program creates a limited forum for speech, and the State has denied OCP access to this forum in violation of the First Amendment. They cite *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 800 (1985), for the proposition that access to the VPD can be restricted only if the restrictions are "reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* (citation omitted). In *Cornelius*, the Court considered whether the federal government could exclude certain groups from the Combined Federal Campaign, a program in which nonprofit groups solicit donations from federal employees by disseminating written statements about their organization. *Cornelius*, 473 U.S. at 790-91. But the First Amendment issue in that case was whether the *solicitations* were speech, not whether the payroll deductions were speech. *Id.* at 797; *see also Bailey v. Callaghan*, 715 F.3d 956, 958-59 (6th Cir. 2013) (holding that "a

9

payroll deduction—the ministerial act of deducting a particular sum from an employee's paycheck," is not speech).

Moreover, the Supreme Court has already held that if a state declines access to a VPD program to a particular entity, it "does not suppress [ ] speech but simply declines to promote it through public employers checkoffs." *Ysursa*, 555 U.S. at 361. [T]he State is not constitutionally obligated to provide payroll deductions at all," *id.* at 359, and such a program "requires only viewpoint neutrality," *Walker*, 705 F.3d at 645 (citation omitted) (citing *Ysursa*, 555 U.S. at 358-59). Plaintiffs have produced no evidence of viewpoint discrimination underlying the numerosity requirement. Thus, "the Act must be upheld if there is any rational basis for the law." *Utah Educ. Ass'n v. Shurtleff*, 565 F.3d 1226, 1231 (10th Cir. 2009) (citing *Ysursa*, 555 U.S. at 359). There is a rational basis for this requirement and thus, Plaintiffs' First Amendment challenges to the numerosity requirement fail.

### C. Equal Protection

Plaintiffs argue that that the numerosity requirement also violates the Equal Protection Clause of the Fourteenth Amendment. They do not allege that the State discriminated against OCP because of its membership in a particular class; they therefore raise the "class-of-one" theory of equal protection. To succeed on this claim, "a plaintiff must first establish that others, 'similarly situated in every material respect' were treated differently. A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' and 'wholly unrelated

to any legitimate state activity.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (citations omitted).

First, Plaintiffs have produced no evidence that the State is enforcing the numerosity requirement unequally with regard to organizations not approved for VPD prior to January 1, 2008. Therefore, any as-applied equal protection claim must fail. Second, even if OCP is "similarly situated in every material respect" to the organizations exempted from numerosity, the Court has found that there is a rational basis for such a distinction. Accordingly, Plaintiff's equal protection challenge to the numerosity requirement on its face also fails.

## **Exclusivity Requirement**

Plaintiffs next argue that the exclusivity requirement violates their right of association under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs lack standing for these claims because their injuries are not redressible by the Court, and thus such claims are dismissed for lack of subject matter jurisdiction.[2]

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Standing is a jurisdictional requirement that the Court is required to address *sua sponte* to ensure that there is an Article III case or controversy before it. *Rector v. City and County of Denver*, 348 F.3d

---

[2] Although the Tenth Circuit vacated this Court's dismissal of Plaintiffs' claims for lack of subject matter jurisdiction in *Oklahoma Corr. Prof'l Ass'n, Inc. v. Doerflinger*, 468 F. App'x 916 (10th Cir. 2012), the Court considered only Plaintiffs' standing with regard to their claims challenging the numerosity requirement, and not Plaintiffs' claims challenging the exclusivity requirement.

935, 942 (10th Cir. 2003). There are three "irreducible constitutional minimum" requirements for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest that is concrete and particularized and actual or imminent, rather than conjectural or hypothetical. *Id.* Second, the plaintiff's injury must be "fairly traceable" to the defendant's conduct. *Id.* Third, it must be likely rather than merely speculative that the injury will be redressed by a favorable decision of the Court. *Id.* at 561. Plaintiffs have the burden of establishing all three elements. *Id.*

When OCP first applied for VPD in 2009, it was denied because it did not meet the exclusivity requirement due to its membership levels including retirees, honorary members, and associate members who were not state employees. Doc. No. 107, Attach. 10-13. OCP then limited its membership exclusively to state employees and was approved for VPD. Doc. No. 107, Attach. 10-14. Plaintiffs ask the Court to "enjoin restrictions on membership categories so that OCP can enjoy the same membership categories as allowed to the other employee associations." Doc. No. 93, at 24. Thus, Plaintiffs' alleged "injury" is being the only organization that is required to satisfy exclusivity in order to qualify for VPD.

But if the Court were to strike down the exclusivity requirement as unconstitutional, OCP would still not qualify for VPD because it does not satisfy the numerosity requirement. There is also no evidence that if OCP were not required to be exclusive that it would shortly gain enough members to reach 2,000. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without

any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Accordingly, Plaintiffs lacks standing to challenge the exclusivity requirement, and the Court dismisses Plaintiffs' claims challenging this requirement.

## Conclusion

In accordance with the foregoing, the Court finds that the numerosity requirement of § 34.70 does not constitute viewpoint discrimination in violation of the First Amendment, is rationally related to a legitimate government interest, and does not violate the Equal Protection Clause of the Fourteenth Amendment. Further, Plaintiffs lack standing to challenge the exclusivity requirement because their injuries are not redressible by the Court.

Because the affidavits at issue in Defendant's motion to strike [Doc. No. 109] and Plaintiffs' motion to supplement [Doc. No. 119] contain no evidence that would change the Court's conclusions on the motions for summary judgment, both are DENIED. Defendant has shown that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Thus, Defendant's Motion for Summary Judgment [Doc. No. 105] is GRANTED on Plaintiffs' claims challenging the numerosity requirement and Plaintiffs' motion for summary judgment [Doc. No. 106] is DENIED. Finally, Plaintiffs' claims challenging the exclusivity requirement are DISMISSED for lack of subject matter jurisdiction.

IT IS SO ORDERED this 3rd day of November, 2014.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE